UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| KARLA S. POLK, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO. 1:16-cv-00149-SLC |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Karla S. Polk, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. PROCEDURAL HISTORY

Polk applied for DIB and SSI in January 2013, alleging that she became disabled on August 1, 2012. (DE 9 Administrative Record ("AR") 248-57). The Commissioner denied her application initially and upon reconsideration, and Polk requested an administrative hearing. (AR 116-17, 138-39, 148-71). After Polk's timely request, Administrative Law Judge ("ALJ") Maryann S. Bright conducted a hearing at which Polk, who was represented by counsel at the time, and a vocational expert ("VE") testified. (AR 31-70). On September 8, 2014, the ALJ rendered an unfavorable decision to Polk, concluding that she was not disabled because despite

---

[1] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

the limitations caused by her impairments, she could perform a significant number of jobs in the economy. (AR 11-24). The Appeals Council denied Polk's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-7); *see* 20 C.F.R. §§ 404.981, 416.1481.

Polk filed a complaint with this Court on May 11, 2016, seeking relief from the Commissioner's final decision. (DE 1). Polk filed her opening brief on September 16, 2016, and the Commissioner filed a response brief on October 27, 2016. (DE 13; DE 14). Polk did not file a reply brief, and her time to do so has now passed. N.D. Ind. L.R. 7-1(d)(2)(B).

## II. FACTUAL BACKGROUND

### A. *Background*

At the time the ALJ issued her decision, Polk was 40 years old, had a high school education and had completed some college courses, and possessed work experience as a customer service representative. (AR 38, 248, 307-08, 362). Polk alleged in her disability application that she became disabled due to depression, anxiety, vertigo, post-traumatic stress disorder ("PTSD"), headaches, near fainting spells, low back pain, and pain or numbness in her legs. (AR 306).

### B. *Polk's Hearing Testimony*

At the hearing, Polk testified as follows: Polk was going through a divorce; she lives in a house with her boyfriend and her three children, ages 18, 16, and eight. (AR 34-36). Polk's 16-year-old daughter is severely disabled due to cerebral palsy and requires 24-hour care; Polk is the sole caregiver for her daughter, consuming most of Polk's time. (AR 36-37, 48). Caring for her daughter, who weighs 60 pounds, requires lifting her to and from her chair, changing her

diapers, feeding her every four hours, and administering her medicine twice a day. (AR 59-60). Polk receives Medicaid and child support, and her daughter receives SSI. (AR 36-37, 66). Polk drives a car short distances every day, such as to take her children to activities, and every few months she drives to Indianapolis for her daughter's doctor appointments. (AR 37, 49). Polk's boyfriend and niece perform most of the cooking and cleaning for the household; when Polk does do household tasks, such as washing dishes, she has to take intermittent breaks. (AR 60). Polk and her boyfriend do the shopping together. (AR 48-49, 65).

When asked why she felt she could not work, Polk responded that she has anxiety attacks and gets "emotional," resulting in daily crying spells, which caused her to miss work when she was employed. (AR 41, 53-55). She admitted, however, that she also missed work to care for her disabled daughter. (AR 41). Polk was taking Paxil and Xanax, which were effective and did not cause side effects; she also was seeing a therapist weekly. (AR 42-43). She complained of problems with concentration, memory, and relating to others. (AR 47). Polk had frequent headaches when she was working, but now her headaches occur just a few times a month. (AR 60-61). When she gets a headache, she takes ibuprofen and lies down for up to two hours. (AR 61). Polk also has interrupted sleep at night due to sleep apnea, causing her to nap throughout the day. (AR 61-62).

Additionally, Polk complained of back pain, estimating that she could sit for 45 minutes at a time, stand for 20 minutes at a time, and walk about two blocks. (AR 46, 57-58). Her doctor, however, had not prescribed any treatment for her back pain; Polk's back pain is reduced by taking ibuprofen and by changing positions or sitting in a recliner. (AR 44-46, 58).

## C. Summary of the Medical Evidence

On March 5, 2013, Polk underwent a mental status examination by Wayne Von Bargen, Ph.D., at the request of the state agency. (AR 389-92). She was cooperative, logical, relevant, coherent, and alert, but her affect was anxious and she became tearful at times. (AR 389). She stated that being in a crowd does not bother her. (AR 389). When describing her daily activities, Polk told Dr. Von Bargen that she takes her children to school, naps for a few hours, watches television, cleans the house, goes shopping every day just to get out of the house, and takes her son to baseball games; her hobbies include playing on the computer and on her phone. (AR 389-90). Dr. Von Bargen's impression was anxiety disorder, not otherwise specified, and rule out panic disorder without agoraphobia; he assigned her a Global Assessment Functioning ("GAF") score of 65.[2] (AR 390).

Also on March 5, 2013, Polk was examined by Dr. B.T. Onamusi for a nine-year history of pain in her back, right wrist, knees, ankles, and hips. (AR 393-96). She described the pain as intermittent and moderate-to-severe, radiating to her legs; her pain worsened with prolonged standing or walking. (AR 393). However, she had not seen a doctor for these complaints and did not take any medications—over-the-counter or otherwise—for her back pain. (AR 393). She also complained of headaches, but she had not seen a doctor about this problem either. (AR

---

[2] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., Text Rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id.* "The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, several medical sources of record used GAF scores in assessing Polk, so they are relevant to the ALJ's decision. *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

393). Upon examination, Polk walked with a normal gait and had no difficulty transferring to or from an examination table; she was unsteady walking on heels and toes, and she was unable to squat, knee, or tandem walk. (AR 394). Her grip strength was 45 pounds in her right hand and 80 pounds in her left hand. (AR 394). She became tearful during a range of motion examination of her spine, and Dr. Onamusi terminated the musculoskeletal portion of the examination at that point. (AR 395). Dr. Onamusi assessed: (1) chronic back pain with polyarthralgia, probably myofascial versus degenerative, but the musculoskeletal examination was limited due to Polk's tearfulness; (2) recurrent headaches with periods of incapacitation, about once a week, four hours each time; and (3) recurrent dizziness, infrequent, occurring about once a month to once every other month. (AR 395). Dr. Onamusi concluded that Polk was capable of engaging in light physical demand level activities as defined in the Dictionary of Occupational Titles. (AR 395).

On March 6, 2013, Stacia Hill, Ph.D., a state agency psychologist, reviewed Polk's record and concluded that she had mild difficulties in maintaining social functioning, but no restrictions in activities of daily living or in maintaining concentration, persistence, or pace. (AR 103-04). Dr. Hill concluded that Polk's mental impairment was not severe. (AR 104). A second state agency psychologist, J. Gange, Ph.D., reached the same conclusion about two months later. (AR 122).

On March 8, 2013, Dr. M. Brill, a state agency physician, reviewed Polk's record and concluded that she could lift 10 pounds frequently and 20 pounds occasionally; sit about six hours in an eight-hour workday; stand or walk about six hours in an eight-hour workday; balance, stoop, kneel, crouch, and climb occasionally; and must avoid concentrated exposure to

5

hazards and heights. (AR 104-06). A second state agency physician, Dr. Mangala Hasanadka, reached the same conclusion the following month, except she found that Polk could frequently balance, stoop, kneel, and crouch. (AR 123-25).

On August 5, 2013, Polk saw Dr. Richard Tielker about her anxiety. (AR 415-16). She had lost her job a year earlier and was experiencing increased stress and some depression. (AR 415). She also complained of some numbness in her left arm and leg, and problems with her left knee. (AR 415). Dr. Tielker observed that Polk was anxious. (AR 415). A straight leg raise test was negative bilaterally. (AR 415). He increased her Paxil dosage. (AR 416).

On March 17, 2014, Polk reported to Dr. Tielker that she had been experiencing increased stress and panic attacks lately, as she was going through a divorce. (AR 419). She reported symptoms of confusion, reduced concentration, depressed mood, dizziness, excessive worry, irritability, nervous or anxious behavior, palpitations, panic and shortness of breath, and occasional nausea. (AR 419). Her symptoms were interfering with her daily activities and her sleep. (AR 419). Nevertheless, Dr. Tielker documented that Polk's mood and affect were normal. (AR 419). Dr. Tielker adjusted Polk's medications. (AR 420).

On April 3, 2014, Polk saw Elizabeth Fomley, M.A., a mental health counselor at Cornerstone Vision Counseling, for her complaints of anxiety and panic attacks. (AR 424). Polk had recently separated from her husband of 14 years and had a new boyfriend. (AR 424). She also was dealing with stressors of unemployment, financial problems, and caring for her disabled daughter. (AR 424). Ms. Fomley assessed an adjustment disorder with depressed mood and anxiety, and dependent personality disorder; she assigned Polk a GAF score of 59. (AR 424). Ms. Fomley recommended that Polk attend counseling on a weekly basis. (AR 424). Polk

then saw Ms. Fomley for the next six weeks, reporting feelings of anxiousness and that the stressors in her life—going through a divorce, caring for her disabled daughter, and her other two children moving in with their other parent—were causing her anxiety. (AR 423-29). On May 28, 2014, Ms. Fomley wrote that while Polk was stressed at times, she appeared to be "managing with adjustments" in her life. (AR 423).

On April 15, 2014, Polk saw Dr. Tielker for her annual examination, reporting that Paxil was controlling her symptoms of anxiety and depression. (AR 434-36). She reported low back pain and arthralgias in her right hip. (AR 435). She had full range of motion of her hips without pain, but had some mild tenderness above her right lateral hip area. (AR 436). She had a normal mood and affect, and she was not nervous or anxious. (AR 435-36). She denied having any sleep disturbance, dysphoric mood, or decreased concentration. (AR 435-36).

On June 30, 2014, Ms. Fomley completed a mental health questionnaire on Polk's behalf, which was countersigned by a psychologist. (AR 445-47). Polk's diagnoses were adjustment disorder with depressed mood and anxiety, and rule out dysthymic disorder. (AR 445). Her signs and symptoms included sleep disturbance, decreased energy, difficulty concentrating, distractability, hostility, and irritability. (AR 445). Ms. Fomley noted Polk's ongoing life stressors and that she had panic attacks once or twice a month; her current GAF was 65. (AR 446). Ms. Fomley opined that Polk had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild deficiencies in concentration, persistence, or pace; and no episodes of decompensation. (AR 447). She estimated that Polk's impairments would cause her to miss work about two days a month. (AR 447).

## III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A),

8

1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On September 8, 2014, the ALJ rendered her decision. (AR 11-24). She found at step one of the five-step analysis that Polk had not engaged in substantial gainful activity after her alleged onset date of August 1, 2012, and at step two that she had the following severe

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

impairments: degenerative disc disease, obesity, and adjustment disorder with depressed mood and anxiety. (AR 13). At step three, she determined that Polk's impairments were not severe enough to meet a listing. (AR14-16). Before proceeding to step four, the ALJ determined that Polk's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely credible" (AR 21) and assigned the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . in that she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently and she can stand/walk and sit, each, for approximately 6 hours per 8 hour work day with normal breaks; however, she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes or scaffolds; she must avoid concentrated exposure to unprotected heights and dangerous, unguarded machinery; she is unable to engage in complex or detailed tasks, but she can perform simple, routine and repetitive tasks consistent with unskilled work; she is able to sustain and attend to task throughout an 8-hour workday; she is limited to performing low stress work, defined as requiring only occasionally decision making and only occasional changes in the work setting; and she is limited to work with no production rate or pace requirements.

(AR 16-17). Based on this RFC, the ALJ concluded at step four that Polk could not perform her past relevant work. (AR 22). The ALJ then proceeded to step five where she determined that, considering her age, education, and experience, Polk could perform a significant number of other light exertional jobs within the economy, including an electrical accessory assembler, a small products assembler, and a cleaner. (AR 23). Therefore, Polk's claims for DIB and SSI were denied. (AR 24).

## C. Analysis of the ALJ's Decision

Polk fails to advance any challenges to the ALJ's decision with particularity. Instead, she simply reiterates in her two-page brief her various medical symptoms and her ongoing life

10

stressors—including that she is going through a divorce, is the sole caregiver for her disabled daughter, and is caring for her 10-year-old child. (DE 13). She also asserts that she experiences anxiety and panic attacks "during [job] interviews, . . . in grocery stores, . . . in crowds, traffic [and] even elevators." (DE 13). Because Polk has not developed any arguments with specificity concerning the basis for the ALJ's decision, Polk has waived all challenges to the ALJ's decision. *See, e.g.*, *Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (explaining in a social security appeal that undeveloped arguments are deemed waived (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007))).

And, to the extent Polk is requesting that the Court reweigh the evidence in the hope that it will come out in her favor this time, her plea is unavailing, as the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Nevertheless, to complete the record, the Court will examine the ALJ's decision in more detail—in particular, the RFC assigned by the ALJ. *See generally id.* ("[The Court's] task is limited to determining whether the ALJ's factual findings are supported by substantial evidence." (citations omitted)).

Although an ALJ may ultimately decide to adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996). The RFC assessment "is based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an

11

individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) (emphasis added); *see* 20 C.F.R. §§ 404.1545, 416.945.

Here, the ALJ concluded that Polk has the exertional RFC to perform light work, which requires the ability to lift 10 pounds frequently and 20 pounds occasionally, and stand or walk six hours out of an eight-hour workday. (AR 16); *see* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Additionally, the ALJ assigned the following limitations: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; and no concentrated exposure to unprotected heights and dangerous, unguarded machinery. (AR 16). This RFC assigned by the ALJ is consistent with the opinions of Dr. Onamusi, an examining physician, and Dr. Brill, a reviewing state agency physician, and is slightly more conservative that the opinion of Dr. Hasanadka, a reviewing state agency physician, who found that Polk could frequently balance, stoop, kneel, and crouch.

As to Polk's mental limitations, the ALJ concluded that while Polk is unable to engage in complex or detailed tasks, she has the mental RFC to perform simple, routine and repetitive tasks consistent with unskilled work and is able to sustain and attend to tasks throughout an eight-hour workday. (AR 16-17). The ALJ further limited Polk to low stress work, defined as requiring only occasional decision making and occasional changes in the work setting and no work with production rate or pace requirements. (AR 17). This mental RFC is consistent with the opinions of Drs. Hill and Gange, the reviewing state agency psychologists; the GAF score of 65 indicative of mild symptoms assigned by Dr. Von Bargen, an examining psychologist; and the findings of

mild symptoms and the GAF score of 65 assigned by Ms. Fomley, Polk's treating mental health therapist.

In fact, Polk fails to point to *any* medical source of record who assigned her more conservative physical or mental limitations. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [her] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

The ALJ properly considered other evidence of record as well when determining Polk's RFC, such as her daily living activities and the lack of treatment for her various conditions. *See* 20 C.F.R. §§ 404.1545, 416.945 (instructing the ALJ to consider *all* of the relevant evidence in the case record when assessing a claimant's RFC); *Earnest v. Astrue*, No. 1:06-cv-714-JDT-TAB, 2007 WL 2904067, at *11 (S.D. Ind. Sept. 29, 2007) (stating that an ALJ should consider the "effects of treatment" when determining a claimant's RFC); *Gardner v. Barnhart*, No. 02 C 4578, 2004 WL 1470244, at *13 (N.D. Ill. June 29, 2004) (considering a claimant's limitations in activities of daily living when assigning her RFC). That is, the ALJ observed that Polk is the sole caregiver for her 16-year-old disabled daughter who requires 24-hour care, cares for her other children, performs some household chores, goes shopping every day just to get out of the house, goes to her son's ball games, is independent with her self care, and has no problem being around crowds, friends, or neighbors. (AR 15, 17). The ALJ also considered that Polk has received only conservative treatment for some conditions and no treatment at all for other

13

conditions. (AR 14 (noting Polk has not sought treatment for her headaches), 17 (noting that Polk has not sought treatment for her back pain)).

Of course, when assessing Polk's RFC, the ALJ also determined the credibility of Polk's testimony of debilitating limitations, concluding that she was "not entirely credible." (AR 21); *see Scheck*, 357 F.3d at 701 (explaining that making a credibility determination is inherent in an ALJ's RFC assessment). Because the ALJ is in the best position to evaluate the credibility of a witness, her determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435 (citation omitted).

In reaching her credibility determination, the ALJ noted the lack of objective medical evidence supporting the severity of Polk's subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also Hall v. Barnhart*, No. 1:04-cv-1847-DFH-TAB, 2006 WL 3206096, at *4 (S.D. Ind. June 15, 2006) (explaining that the absence of objective medical evidence is one factor to be considered by the ALJ when making his credibility determination). For example, the ALJ observed that Polk had not even had X-rays done of her back. (AR 14, 21). And, as discussed *supra*, the ALJ also considered Polk's daily living activities and the conservative treatment, or lack thereof, that she had undergone for her conditions. (AR 14, 21); *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996) (explaining that a claimant's daily living activities and treatment measures are two factors

14

that the ALJ should consider when determining a claimant's credibility).[4]

The ALJ also considered that Polk told Dr. Tielker that Paxil controlled her anxiety and depression. (AR 20, 434, 451); *see Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) ("[P]laintiff's testimony that her sleeping disorder prevented her from working was inconsistent with her testimony that . . . medication kept it under control."). In addition, the ALJ found it inconsistent that Polk alleged in one forum that she was physically and mentally able to work in order to qualify for unemployment compensation, while alleging in another forum a complete inability to work during that same period in an effort to obtain disability benefits. (AR 22); *see Schmidt*, 395 F.3d at 746 (considering as factor in the ALJ's credibility determination that the claimant had applied for unemployment compensation—representing to the state authorities that he was able and willing to work—for the same period that he was seeking disability).

In short, the ALJ adequately articulated her reasoning for her determination that Polk's testimony of debilitating limitations was "not entirely credible," and her determination is not "patently wrong." *Powers*, 207 F.3d at 435 (citation omitted). And after determining Polk's credibility, the ALJ arrived at an RFC that is adequately supported by the evidence of record. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (articulating that the final responsibility for deciding the claimant's RFC and whether she is disabled is "reserved to the Commissioner"). Then, considering Polk's age, education, and experience, and in reliance upon the VE's testimony, the ALJ properly applied this RFC and determined that Polk was not disabled because she could perform a significant number of light exertional jobs within the economy, including an

---

[4] Social Security Ruling ("SSR") 96-7p was superseded by SSR 16-3p in March 2016, *see* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016), but SSR 96-7p governed at the time the ALJ issued his decision, and the ALJ refers to SSR 96-7p in his decision (AR 21). So the Court, too, will refer to SSR 96-7p.

electrical accessory assembler, a small products assembler, and a cleaner.

Therefore, because the ALJ's decision is supported by substantial evidence and does not contain legal error, it will be affirmed.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Polk.

SO ORDERED.

Entered this 16th day of January 2018.

                                                /s/ Susan Collins
                                                Susan Collins
                                                United States Magistrate Judge